## WILLIAM CHETWOOD v. STEPHEN P. BRITTAN.

The obligor of a bond will not be admitted to prove by parol, that, at the time of giving the bond, it was agreed that the obligee should look to another source for payment, and that the obligor should not be personally liable.

Whatever the contracting parties reduce to writing, must be considered as embodying their understanding at that time. If by fraud, or mistake, or

[Chetwood v. Brittan.]

accident, the paper should not contain the true agreement or the whole agreement, it may be supplied by parol.

Evidence will not be admitted of what took place at the time of executing a written agreement, to add to or vary the contract. A written agreement cannot be varied by parol evidence, unless in cases where there is a clear subsequent and independent agreement, varying the former.

But it seems that the objection to varying a written agreement by parol, rests merely on the rules of evidence. If a defendant, by his answer, admits the charge in the bill, that at the time of executing a bond, it was verbally agreed that the complainant should not be personally liable for the money, will not equity give relief against a recovery on the bond?—Quere.

The continuance of an injunction must always rest in discretion, not arbitrary, but controlled by established rules. The equity of the bill may be answered, and yet the court will continue the injunction to the hearing, especially if the dissolution would work a greater injury than a continuance of the process.

Injunction continued upon terms.

BILL, filed 25th of February, 1840, states, that a short time previous to May 16th, A. D. 1836, Aaron L. Middlebrook entered into an agreement, as complainant was informed, to purchase from Stephen P. Brittan, the defendant, a tract of land containing about twenty-three acres and three quarters, situate about half a mile from Elizabeth-Town : that the price was three hundred dollars or more per acre, and upwards of two hundred dollars more per acre than the defendant paid for the same : that the complainant agreed to join Middlebrook in the purchase ; but when the company was formed to take said property in shares, as herein after mentioned, complainant disposed of his right to take a part, but never received one cent for the same, and has no expectation of ever receiving any thing : that before any deed was given for said property, Middlebrook procured one Jonathan D. Williamson to form a company to take said land in shares : that a company was made up, and complainant was offered a share, but declined taking any : that some time afterwards, Middlebrook and Williamson called at complainant's office, and wished complainant to take a deed in his own name as a mere stakeholder or trustee for those interested in the property : that they informed complainant that the parties interested wished the deed

[Chetwood v. Brittan.]

to be made out to him, he having no interest therein, that he would be a mere stake-holder, and need do nothing more in the business than merely sign deeds when any part of the property should be sold, and that they intended to lot off the land and sell it without delay, and pay the defendant the remainder of the purchase money out of the proceeds of the first sales. That the defendant knew of all these circumstances, and consented thereto, and particularly that complainant had no interest in the property, and took the deed as a mere stake-holder, and often so admitted. That about May 16th, A. D. 1836, the defendant called at complainant's office, and said he had those papers ready, and produced a deed executed by himself and wife for the said premises, and duly acknowledged, bearing date May 16th, A. D. 1836 : that at the same time the defendant produced a bond and mortgage on said premises, to be executed by complainant to him, for the balance of the purchase money, he having received about two thousand dollars thereof from Middlebrook and Williamson : that complainant objected to execute the bond, as he had no interest in the property, but the defendant informed him he need be under no apprehension of trouble or difficulty as to liability, as he would take the land or look to the land at any time for the balance of the consideration money ; upon which assurance of the defendant, complainant was induced to sign said bond and mortgage. That the defendant had the crops growing on said land the year he sold it : that he received from Williamson and Middlebrook the avails of subsequent crops of the said land, and the proceeds of the sale of the same under a decree of the court of chancery, amounting to eighteen hundred dollars, so that he realized more than four thousand dollars from said property. That after the execution of the said bond, the defendant from time to time had interviews with the persons interested in the property, and extended the time of payment of the interest, and in some cases took notes from them for interest due, without consulting complainant, and never asked complainant to make any payment on said bond, nor ever intimated to complainant that he looked to him for any part of the same, and

[Chetwood v. Brittan.]

managed the business in his own way until after the mortgaged premises were sold, although at the time of said sale the bond had been due some time. That after the premises were sold under the decree upon the mortgage, the defendant offered the persons interested in the lands, that if they would pay the residue of the purchase money, he would throw off seven or eight hundred dollars, and would take their several notes endorsed by others for their respective proportions of said balance after said deduction. That after said bond and mortgage were given, and interest due thereon, the defendant borrowed one thousand dollars of complainant, and gave his note therefor, payable in six months, with interest: that he paid the interest and three hundred dollars of the principal of said note when it became due, and would have paid the whole amount if required, but as complainant did not want it at that time, the defendant gave complainant his note for seven hundred dollars, payable in six months with interest; and although interest was due on said bond, and as complainant believes the principal also, when the money was borrowed and when it became due and part thereof paid and the new note given, the defendant never intimated to complainant that he looked to him for payment of any part of the said bond, nor suggested to him to apply any part of the monies secured by the said note to the payment of any part of the interest or principal of said bond: that the complainant had no idea that the defendant would ever attempt to make him personally responsible on said bond, or trouble him with any suit on the same. That afterwards, the defendant filed a bill of privilege in the supreme court on the said bond against the complainant, to recover from him the balance alleged to be due thereon. Bill prays an injunction to restrain defendant from proceeding in the suit against the complainant, and also from assigning the said bond to any other person, and such other relief, &c.

On filing the bill an injunction was allowed by the chancellor. On the 14th of July, 1840, the defendant filed a demurrer, which was subsequently withdrawn by leave of the court, and an answer filed.

[Chetwood v. Brittan.]

The answer admits, that on the 13th of May, 1836, the defendant made an agreement in writing with Aaron L. Middlebrook, to sell him about twenty-seven acres of land about one fourth of a mile from Elizabeth-Town, at two hundred and seventy-five dollars per acre, and that on or about the 16th day of the same month the defendant and his wife, by the request of Middlebrook, conveyed to the complainant about twenty-four acres of the land so agreed to be sold to Middlebrook; and at about the same time, at the like request, he conveyed the balance of the tract to Jonathan D. Williamson; and for the balance of the purchase money for the said sale and conveyance to the complainant, the defendant received from the complainant his bond or obligation, bearing date the 16th day of May, 1836, conditioned for the payment of four thousand five hundred and seventy-six dollars and sixty-nine cents, in one year, with interest payable semi-annually, which bond was secured by a mortgage of the same date, executed by the complainant and his wife, on the land conveyed to him as aforesaid. That the land so agreed to be sold to Middlebrook, was purchased by defendant several years before the sale to Middlebrook, and for some years prior to the sale produced annually per acre the interest of three hundred dollars. That the said land cost the defendant nearly one hundred dollars per acre, including improvements, and the part conveyed to Williamson cost one hundred and fifty dollars per acre, exclusive of improvements. Denies that defendant was to receive from the sale upwards of two hundred dollars per acre more than the land cost, including improvements. The agreement to purchase of this defendant, made by Middlebrook, was made for himself, and no other person was then known to defendant to be concerned with him, and as defendant is informed and believes, the complainant agreed with Middlebrook to become interested as one of the purchasers, and after said agreement with other persons interested therein, sold out their interest in the same to Jonathan D. Williamson and others, at the rate of four hundred dollars per acre, and that complainant sold his interest in the same for at least seven hundred dollars more than it cost him. Admits that it may be true

that complainant has received nothing, and expects to receive nothing for his share so sold ; and that it may be true that Middlebrook did procure Williamson to form a company to take the land conveyed to the complainant in shares, that a company was formed for that purpose, and that complainant was offered a share or shares and declined taking any, that Middlebrook and Williamson wished complainant to take a deed in his name, and hold the same as trustee or stake-holder for the purchasers, but denies that defendant, at or before executing his deed to the complainant, was acquainted with the plans or arrangement of selling and dividing the lands, or that he had any thing to do therewith, or that the complainant was in any manner a trustee for the defendant, or authorized so to act for him, or that the defendant at the time of executing the deed to the complainant, or at any time since, was in any way interested in the lands conveyed by him to complainant other than as mortgagee thereof. Admits that it may be true that Middlebrook and Williamson represented to complainant that he was to be a mere stake-holder or trustee for the purchasers, and need only sign deeds when any part of the property was sold, that they intended to sell without delay, and that the balance of the purchase money would be paid out of the proceeds of the sales, but denies any knowledge thereof or participation therein. The answer further states, that the son of the complainant had been employed by the defendant as his attorney and counsellor for several years previous to the said sale by the defendant, and defendant having full confidence in his accuracy, employed him to prepare the deed executed by the defendant and his wife to the complainant, as stated in the bill of complaint, and that if the consideration for the sale is omitted in the deed of conveyance, such omission defendant believes was accidental. Denies that the omission was by the direction, knowledge or consent of the defendant. States that the bond and mortgage given to the defendant by the complainant, were drawn by the complainant's son. Denies that the said bond and mortgage were delivered on any terms or conditions inconsistent with the absolute delivery thereof. Admits that after the papers

[Chetwood v. Brittan.]

were executed, and at the time they were exchanged, the complainant said to the defendant, in a pleasant way, "Now, judge, I hope you will look to the land first, before you call on me for the bond;" and that defendant said he would do so if the complainant wished it, which defendant considered as a friendly act toward complainant and no part of the bargain. Denies that the defendant engaged to look to the land and not to the complainant for the payment of the purchase money, or that defendant made any other promise than as before stated. Admits that the defendant received from Middlebrook and Williamson, in promissory notes, one thousand nine hundred and fifty nine dollars and thirty cents, on account of the purchase money of said land, making, with the amount secured by the complainant's mortgage, the whole consideration for which said lands were conveyed to the complainant. Denies that at the time of executing the said bond and mortgage, or at any other time, defendant agreed to take back the land, or to look to the land at any time for the balance of the consideration money. States that it was a part of the defendant's contract with Middlebrook, that defendant should have all the crops then growing on the land, which defendant gathered, but that he has received no other crop or profit except some pasture amounting to thirteen dollars and twenty-eight cents, which was credited to the complainant. Admits that the mortgaged premises, upon a bill filed by this defendant, were sold by the sheriff of the county of Essex upon a decree of this court, and that the defendant received one thousand seven hundred and twenty-four dollars and fifty-four cents arising from said sale, and no more. States that after complainant agreed to become interested with Middlebrook in the purchase from defendant, the complainant and those interested with him sold out their interest to a company for three thousand dollars above what the land was purchased for, for which they received certain promissory notes in payment; and that when the complainant agreed to take the deed, it was agreed by the purchasers to indemnify him from any loss in consequence of his taking the deed and giving his bond and mortgage. Admits

that about the time the money secured by the complainant's bond and mortgage was becoming due, the defendant was called on by some of those interested in the purchase, to know if he intended to foreclose his mortgage if the money should not be immediately paid, to whom defendant stated that if the interest was paid he would not press for the principal; soon after which this defendant received from complainant one hundred and fifty dollars, and no more, which was endorsed on the bond. That he was subsequently applied to by the same persons to know if he would not take the land back, which the defendant refused to do, but consented that if he could be paid, principal and interest, or if they would satisfy the complainant and pay the interest on the bond, that he would credit five hundred dollars on the bond; one of which propositions this defendant supposed, from the expression used by those calling on him, would have been accepted. States that defendant urged upon complainant to procure the bond of indemnity from those interested in the land, and from friendly feelings for complainant offered to take the bond and endeavor to get it executed, which he did, but without success. Denies receiving any note or money for interest on said bond except as before stated. States that in October, 1837, the defendant (being urged thereto by complainant) took from the complainant by way of loan one thousand dollars for six months; that at its maturity and afterwards defendant was desirous to pay off the note, but complainant declined taking it. Defendant insisted on paying three hundred dollars, and for the balance due on said note to the complainant, on the 22d day of June, 1838, the defendant gave his note to the complainant for seven hundred dollars, at six months. Denies that this temporary loan was in any wise to affect the complainant's bond to the defendant. Admits that it may be true that nothing was said, on giving said notes, about the complainant's bond to the defendant, as he had promised first to proceed against the land, nor was any thing then said respecting a note for five hundred and seventy-two dollars which defendant then held against the complainant and his son. Admits the filing of a bill of privilege

[Chetwood v. Brittan.]

against the complainant for the recovery of the money due on the bond. Insists that defendant has said or done nothing which should preclude or bar him from proceeding in his action against the complainant to recover the balance due on the bond, and that the injunction ought to be dissolved. The answer further states, that since the filing of the bill of complaint in this cause, the complainant has prosecuted the defendant at law to recover the promissory note for seven hundred dollars given by the defendant to the complainant; that the defendant appeared to the said action, and gave notice that he would set off so much of the balance due on the bond as would be sufficient to satisfy the note, and would claim the balance, and that the said suit is still pending undecided. Defendant has no recollection or belief that after the sale of the said mortgaged premises he ever authorized the said Aaron L. Middlebrook, (who married this defendant's daughter sometime after the execution of the said article of agreement,) to throw off any sum whatever of the balance due on the said bond, or to take any person's notes for the same.

The cause came on for hearing upon motion on behalf of the defendant to dissolve the injunction, upon bill and answer, before the chancellor, at Newark, on the 5th day of May, 1841.

*E. Vanarsdale* and *I. H. Williamson*, for defendant.

*W. Chetwood* and *O. S. Halsted*, for complainant.

Cases cited by the counsel of the defendant, in support of the motion:—*Eden on Inj.* 11; 1 *John. Chan. R.* 282; 3 *Campbell*, 57; 3 *Barn. and Ald.* 233; 8 *John. Rep.* 193; 13 *Mass.* 99, 172; 7 *Mass.* 518; 1 *Vesey*, 241; *Saxton*, 393, 498, 402; 1 *Green*, 165; 3 *Green*, 116; 1 *John. Chan. R.* 343; 1 *Bay.* 461; 3 *Wilson*, 275; 1 *Brown's Chan. R.* 92; 2 *Ibid*, 219; 2 *John. Chan. R.* 559; 4 *Brown's Chan. R.* 514; 7 *Ves.* 211.

Cases cited by the counsel of the complainant, contra:— *Wyatt's Prac. Reg.* 201-2; 2 *John. Chan. R.* 205; *Hammond's*

[Chetwood v. Brittan.]

*Dig.* 645; 1 *Vesey,* 193; 1 *Munford,* 468; 1 *Hopkins,* 148; 1 *Atkyns,* 516.

THE CHANCELLOR. The answer having been filed, I am now moved to dissolve the injunction heretofore issued in this cause. Upon this motion the whole merits of the case, as they appear upon bill and answer, have been discussed. The defendant claims to succeed in his application upon the case made by the bill itself, and if not, then upon the answer, as being a denial of the complainant's equity.

The bill presents this state of facts. That in May, 1836, Aaron L. Middlebrook entered into an agreement with the defendant for the purchase of lands at Elizabeth-Town, and in which purchase the complainant became interested with him. Before any deed was given, a company was formed to take the land in shares, and the complainant, not wishing to be one of the company, parted with all his interest, but never received any thing and has no expectation of ever receiving any thing for it. The complainant, under these circumstances, (his interest in the premises being gone,) was called upon by Middlebrook and Jonathan D. Williamson, (who had made up the company to take the land as before stated,) and requested to take a deed for the property in his own name as a stake-holder or trustee for those interested in it, and they stated that the parties in interest desired him to do so. The complainant consented to this course, and the defendant accordingly called with a deed executed to him for the property, and at the same time produced to the complainant a bond and mortgage on the property, to be executed by him, for a part of the purchase money. The complainant at first objected to signing the bond, for the reason that he did not wish to bind himself for other men's debts, but did so upon the defendant's informing him " that he need be under no apprehension of trouble or difficulty as to liability, as he would take the land or look to the land at any time for the balance of the consideration money, and that he was to receive the proceeds of the sales as fast as lots were sold, from the purchasers." There are

various other allegations in the bill, but this is the material one upon which the injunction was granted. This was a transaction during the time when speculation in real estate was every day's business, and for almost every man in society, in some parts of the country, and it was no doubt believed that in no possible event could the complainant be subjected to any loss by signing the bond. But things turned out otherwise, and after selling the property covered by the mortgage, there remains a deficiency due on the bond of rising three thousand dollars. For this money a suit has been instituted at law by the defendant against the complainant on his bond, and upon the above state of facts an injunction was issued restraining the defendant from proceeding therein until the further order of this court. When this bill was first presented to me, I had some doubts whether the complainant would be allowed to make this proof even if in his power, (should the answer deny the charge,) as being a violation of that sound rule of evidence which forbids a contradiction of a written agreement or deed by parol. The argument on this point has confirmed my first impressions, that to allow this evidence would endanger the security which must belong to a solemn instrument and render our rights and property insecure. The complainant executes under his hand and seal a bond to the defendant, and thereby promises at a certain day to pay him so much money. The evidence to be offered is, that at that very time, (not at a later day and under other circumstances,) the complainant was not to pay the money on the bond, but the defendant agreed to look to the land alone. Does not this come in direct conflict with the writing itself? If the bond was not to be paid, why was it given? The lien by way of mortgage would have been as complete without a bond as with it. It is said, indeed, that the complainant does not deny the execution of the bond, or any part of its contents, and that the evidence only goes to show the circumstances under which it was given. If solemn instruments might be so easily obviated by parol testimony of what took place at the time of their execution, and that too in direct opposition to the terms of the writing itself, I confess that my faith in their

value would be greatly shaken. Whatever the parties reduce to writing must be considered as embodying their understanding at that time. If by fraud, or mistake, or accident, the paper should not contain the true agreement or the whole agreement, then, undoubtedly, it may be supplied by parol. In this case there is no allegation of fraud; on the contrary, it is admitted that the bond was executed according to the understanding of the parties. There was no deception practiced on the complainant, nothing omitted in it that should have been inserted, or inserted that was not so intended; but the whole insistment is, that although the complainant did sign and seal his bond for so much money, yet at that very time the agreement was that he was not to pay it. This is letting parol proof overcome the writing and the seal of the party, and striking at the foundation of the security in instruments of this character. The remark of chancellor Kent in 2 *Johns. Ch.* 557, is very true, when he says, "There is nothing more dangerous than to impair the force and effect of solemn contracts in writing, by careless, idle, and perhaps unmeaning conversations." And it is added, "as far as such testimony is in contradiction to the language of the note itself, it is utterly inadmissible."

The cases cited from 1 *Brown's Chan.* 92, and 2 *Brown's Chan.* 219, are very much alike, and bear strongly on this question. Upon settling the terms of an annuity it was agreed that it should be redeemable, but fearing that a clause for redemption, if inserted, might affect the transaction as usurious, it was omitted in the writing. Upon a bill filed to redeem, the evidence of the agreement to redeem was rejected, as being in opposition to the written contract. The lord chancellor said, If it was agreed not to insert the clause of redemption, evidence to that purport could not be given, but if it was left out by fraud, it might. In 4 *Brown's Chan.* 514, the case was, that a memorandum had been drawn up for a lease at a prescribed rent, omitting any thing about taxes, and when the lease was drawn the words "clear of all taxes" were inserted. The court would not allow the lease to be corrected by the memorandum. The

58

lord chancellor, in his opinion, says, " It is quite impossible to admit the rule of law to be broken in upon, and that requires that nothing should be added to the written agreement unless in cases where there is a clear subsequent and independent agreement varying the former, but not where it is of matter passing at the same time with the written agreement." The same principle is recognized in 1 *John. Chan.* 282. In 3 *Atkyns,* 389, evidence was admitted to show an omission in a lease, but that was on a bill for a specific performance, and the evidence was offered to rebut an equity. In such a case great latitude is allowed, and the court will look into evidence of this character against the relief sought. It appeared further, that the complainant had drawn the lease himself, and it was an omission on his part. So in 2 *Vesey, sen.* 299, evidence was read to show that by a subsequent agreement an additional sum was added for rent; but it will be observed this was a subsequent and additional agreement arising upon a new state of facts, from the necessity of pulling down the house and erecting a new one, instead of repairing the old, as was contemplated when the lease was drawn. The case in 2 *Vesey, sen.* 376, referring to this case, expressly says, the evidence was admitted as coming in on a new agreement, and the case is therefore an authority, as I think, for the principle as I have stated it. My present impression, from looking into the cases and the principle upon which the rule is founded, is, that the complainant cannot read evidence of what took place at the time of executing his bond, to sustain the charge in the bill upon which the injunction is granted. But it is only upon the rule of evidence that the difficulty exists, and the danger of defeating by parol the solemn deed of a party; for suppose, upon the bill being filed the defendant had admitted the facts to be as the complainant has stated them, could not this court have given the relief sought? If so, then the injunction was properly issued until answer. This view may possibly have induced the learned counsel to withdraw the demurrer which was originally filed, and substitute an answer in its stead.

Although counsel have argued the question as to the admissi-

bility of this evidence on the present motion, which seemed to call for the expression of some opinion from me upon the subject, and perhaps was so designed, yet I deem it premature to conclude the party by any decision until the evidence is offered ; nor, indeed, can I undertake to say what kind of proof the complainant may have it in his power to offer. I throw out these views upon this part of the case therefore now, not intending to decide the point so as to preclude the complainant, if he shall think proper so to do, from raising the question on the final hearing, nor from taking the testimony with that view, but as due to the importance of the case, and a desire of placing the difficulties, as they present themselves to me, fairly before the complainant. The point is not without its embarrassments, and I should be very willing, if the case goes farther, to investigate it more fully.

The defendant's answer is next to be considered. I have carefully examined it, with the aid of the ingenious criticisms placed upon it by the counsel of the complainant, whose skill on this subject I have often remarked, and I can still view it in no other light than as a broad denial of every main charge in the bill. The substance of the answer is, that the defendant agreed to sell the land to Middlebrook, and for a part of the purchase money was to have a bond secured by mortgage on the same premises. That he knew nothing of the arrangements between Middlebrook and the complainant, by which the latter was to take the deed and give the bond and mortgage, but he agreed to the substitution of the complainant at the request of Middlebrook, and from the knowledge that his security would thereby be increased. The answer denies that the defendant did at the time of the execution of the papers, or at any other time, agree to take back the land, or look to it for the balance of the consideration money, nor has the defendant any recollection or belief that the complainant in his presence objected to giving the bond, but after the papers were executed, and at the time they were exchanged, the complainant said to him, that he hoped he would look to the land *first*, before he called on him for the bond ; to which the defendant assented, and has accordingly exhausted his remedy

[Chetwood v. Brittan.]

first on the mortgage before prosecuting this bond. That this conversation was not considered as in any way affecting the bargain, but as a mere friendly act to the complainant. This is placing the subject in a new light, and takes off the whole point and force of the complainant's allegation. I do not know that a stronger case than this to exhibit the propriety of the rule confining parties to their written contracts, could be made. It proves the fallacy of human memory, and how liable men are to place a construction on every thing that passes favorable to their own interests and wishes. The elevated character of these parties forbids the idea that either would evade the truth for ten times the value of the property in dispute, and yet how widely they differ. All that can be said is, that the equity of the bill is fairly and fully met by the answer.

Under these circumstances, shall this injunction be further continued? This is a question which must always rest in discretion, and yet that discretion should not be arbitrary, but yield to well established rules. The equity may be answered and yet the court will continue the injunction to the hearing, and especially so if a dissolution would work a greater injury than a continuance of the process.

In view of all the circumstances as connected with this case, after thus far unfolding my present views upon it, I consider it my duty not to dissolve the injunction at this time, but to continue it to the hearing. The main question discussed on the argument does not really arise until the evidence is taken in the cause, and it would be in a measure prejudging a party thus to anticipate the complainant on this part of the case. The complainant has further sought his remedy in this court, and if he fail here must fail every where; and if the injunction should be dissolved under the prayer as it now stands in the bill, and the defendant should go on with his suit at law and obtain a judgment, though a decree should finally pass for the complainant, it would come too late. I incline, therefore, to give the complainant a fair and full hearing on the merits of his cause, and not to embarrass and defeat the object of his suit by a decision

[Chetwood v. Brittan.]

against him on this preliminary question. The parties are responsible, and no danger is to be apprehended by the short delay necessary for taking the evidence. The injunction, if continued, must however be upon terms. The complainant must stipulate to suspend further proceedings upon his suit against the defendant on his note, until this cause is settled. That suit, by the pleadings in it, is connected with the bond referred to in this case, and common justice requires that the complainant shall not stop the defendant from proceeding in his suit and yet go on in his own.

The injunction continued to the hearing, and the costs to abide the final decision.