KLEMENTINA BATURA ET AL., PLAINTIFFS IN ERROR, v.
THOMAS McBRIDE, DEFENDANT IN ERROR.

Submitted March 23, 1909—Decided July 2, 1909.

At the Supreme Court—Circuit—trial of this case the plaintiffs offered
    certain material testimony (referred to at length in the following
    opinion) tending to establish their right to a verdict for sub-
    stantial damages. The trial judge overruled the offers as in-
    admissible, and at the close of plaintiffs' evidence, on the defend-
    ant's motion, directed a nonsuit. *Held*, that such exclusion and
    direction was error, and that the judgment below should be re-
    versed and a *venire de novo* awarded.

On error to the Supreme Court.

For the plaintiffs in error, *John J. Stamler.*

For the defendant in error, *William D. Wolfskeil.*

The opinion of the court was delivered by

VREDENBURGH, J. Two Circuit trials of this cause have
occurred, and the proceedings of the second trial are now pre-
sented for review. This court has decided, upon error brought
by the plaintiffs, that the judge erroneously directed, at the
former trial, the jury to find a verdict for nominal damages
in favor of the plaintiffs, and thereupon reversed the judgment
entered upon *postea.* Such direction of the trial judge was put
upon the ground that there was no evidence upon which the
jury might estimate any damages. The opinion of this court
in that case is reported in 46 *Vroom* 480, and holds specifically
that there was evidence to go to the jury as to the value of the
houses and lands purchased as they were in fact, and as they
would have been if the representation as to the leasehold values,
upon which the suit was founded, had been true, and that it
was error to direct a verdict for nominal damages.

At the trial now brought in review before us, the judge, at
the close of the plaintiffs' evidence, directed a nonsuit, and the

plaintiffs have duly assigned error to such disposition of their cause. The legality of this judgment is challenged by the plaintiffs upon the ground that certain evidence offered by them and essential in law to establish their right to a verdict for substantial damages was illegally excluded by the rulings of the judge; their contention being that the evidence offered was legal and relevant and should have been received by the court and submitted to the jury. Since it is probable that the case will be again tried, it is of importance to determine specifically the legality of the testimony offered. The substantial issue in controversy related to the falsity of defendant's statements communicated to the plaintiffs, upon the strength of which the plaintiffs claimed they were induced to purchase and acquire of defendant certain real estate at the price of $16,000. The material averments of the plaintiffs' declaration were to the effect that the defendant, intending to deceive and defraud the plaintiffs, had falsely and fraudulently represented to them that the property sold by him to them produced a rental of $142 every month, whereas, in truth, such rental was only $132 per month, and that the plaintiffs' damages by reason of such misrepresentation was the value of this monthly excess of $10 for the unexpired term of the lease—a period of about four years.

To prove these averments the plaintiffs relied largely upon the statements of the defendant made directly by him to one of the plaintiffs who was called as a witness in her own behalf. She was asked by her counsel the following question, viz.:

"*Q.* Did you see Mr. McBride before the deed was given for the property to talk to him about the lease, and how much rent the lease was to bring?"

Objection was made by the defendant's counsel to the question on the ground as stated by him, "that the contract was the evidence of the agreement of the parties in this connection," and the court thereupon overruled the question. Again she was asked:

"*Q.* Did you or not, meet Mr. McBride in Mr. Schmidt's office, before you paid the balance of the purchase price for the

property and talk to him about the Weidenmayer lease, and how much the rental of the store was?"

The same objection was made, as above, and was again sustained by the court.

It will be conceded that the propounded questions were clearly material and admissible in support of the plaintiffs' declaration, unless the answers called for might have tended either to contradict or vary the terms of the written contract for the purchase of the property entered into between the parties.

Upon turning to this contract, which was introduced in evidence and is printed in full in the record before us (dated April 25th, 1906), it is apparent that it is entirely silent upon the subject sought to be inquired into, *i. e.,* the amount of the rental payable under the lease in question. The only reference in the contract to the lease is contained in the following brief words, viz.: "The premises are conveyed subject to a lease on the corner store, held by Geo. Weidenmayer of the city of Newark."

The plaintiffs' suit was not founded upon any alleged breach by the defendant of the terms of the written contract, but upon matter arising *dehors* the written agreement. Recovery of damages was sought by the plaintiffs because of the alleged false oral representation by the defendant to the plaintiffs respecting the amount of rent payable to the owner of the reversion by force of the lease. As to this the contract did not speak and the minds of the contracting parties had not met in the agreement, the amount of rent not being specified in it, and it is therefore clear that properly responsive answers of the witness to the questions proposed could not have tended to either contradict or vary any of the terms of the paper in question. The action of the trial court in overruling these material questions is plainly unsustainable.

From the record of the trial below it also appears that many questions were asked by the plaintiffs' counsel of the witness, Adolph Reitman, tending to show that both before and after the contract for the sale of the property was signed, but before the property was acquired by the plaintiffs, the defendant had

made false representations to the witness respecting the amount
of the rent in question; that the defendant intended the wit-
ness should communicate such representations to the plaintiffs,
and that he (the witness) had done so. The court overruled
many of these questions, finally holding that representations
made after the parties had already bound themselves could not
influence them, and that such representations to be admissible
must have been made "*before the signing of the contract.*"

Substantially the same reasoning was expressed afterwards
by the judge in his grant of the motion to nonsuit.

This conclusion, and the reason given for it by the court,
seem to me to be untenable. The point of time upon which,
under this view, the legality of the questions asked of the wit-
ness depended was the date of the signing of the contract of
sale (April 25th, 1906). The view taken being that represen-
tations of the defendant made *after* the execution of the con-
tract of sale, although *before* the plaintiffs acquired legal title
to the property, could not, from a legal point of view, be
deemed to have influenced the conduct of the plaintiffs in the
acquisition of the property.

But this reasoning, it seems to me, bears only upon the
*weight,* and not upon the *admissibility* of the testimony. At
the date of the signing of the contract the plaintiffs had paid
but $300 of the $16,000 of the consideration for the property.
The $15,700 balance of the money due the defendant under
the contract was still unpaid, and was not payable until May
25th, 1906, the day fixed for the delivery of the deed. False
representations by the defendant to the plaintiffs as to the
rental value of the leasehold included in their purchase, made
to them at any time before the last date, would, we must pre-
sume, furnish a continuing inducement to them to pay the
purchase-money and acquire complete legal title and possession
of the property. While the signing of the contract gave them
an equitable ownership they were not, by the very terms of the
agreement, entitled to the possession of the property, nor to
any deed of conveyance until the whole $16,000 was paid upon
a future day named in the contract. If they, at the closing of
their purchase, had not been deceived by the defendant as to

the fact that the *represented* rental return exceeded the *actual,* they could, and presumably would, have then insisted upon their legal right to an abatement or reduction of the purchase price to the extent of the value of such difference (subject, of course, to a proper adjustment or discount of the present value of the rentals payable on future dates), and could have avoided the circuity of action and consequent expenses of the pending litigation. These false representations, whether held out to them before or after the contract was signed, presumably led the plaintiffs to pay the defendant a sum of money larger by the amount of said rental excess than was justly due him at the closing of the transaction. It is no answer to say that the plaintiffs were bound by their contract to take the deed and pay the purchase-money. They were only bound in case the contract itself was valid, and there was evidence before the court justifying an inference that the contract itself had been fraudulently obtained.

The evidence of false representation between the execution of the contract and the delivery of the deed was relevant also as rendering more probable the testimony as to similar representations prior to the execution of the contract.

I think the questions asked of Reitman as to the defendant's representations concerning the rent, which were communicated by the former to the plaintiff, whether before or after the contract was signed, were competent. There can be no doubt under the evidence that Reitman was acting as the agent of both parties throughout the entire transaction, and, therefore, representations made by either party to him when communicated to the other party were, as against the person making them, properly evidential.

Irrespective of the testimony that was thus improperly rejected, the plaintiffs, at the close of their proofs, had made out a *prima facie* case of deceit.

We also think that "Exhibit P 1," which established the fact of Reitman's agency for the defendant, was improperly excluded, and that "Exhibit P 4" was admissible as proof of the actual amount of rent to which defendant was entitled.

The judgment below should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

