21 N.J. Super. 147 (1952)
90 A.2d 898
THEODORE THE FLORIST CO., A CORPORATION, PLAINTIFF,
v.
D.A. SCHULTE, INC., A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided July 15, 1952.
*149 Mr. Solomon Lubow, attorney for plaintiff.
Mr. Raymond Chasan, attorney for defendant.
DREWEN, J.C.C.
Defendant moves for an order dismissing the complaint and for judgment on the ground that no genuine issue exists as to any material fact; and which it claims to be entitled to as matter of law. Rule 3:56-3.
Plaintiff occupied commercial premises in Jersey City under a lease made by it with Nobdor Realty Corp. for a term of years ending March 31, 1944. During the term Nobdor's interest was assigned to defendant, which thereupon agreed with plaintiff for the extension of the term to March 30, 1950. Some time thereafter, on October 10, 1946, the parties entered into a further agreement by which the lease was amended. That agreement, together with certain preliminary oral representations alleged to have been made to plaintiff by defendant's agents, is the basis of the present action.
The agreement recites that defendant as lessee in a certain over-lease, which covers the land and buildings that include the premises in question, is obligated thereby to pay all real estate taxes on the subject property. Under the original *150 lease plaintiff had no concern with taxes. The amending agreement alters this. With respect to the remainder of the then current term it provides for the contribution by plaintiff, at a specified rate, to the payment of any tax increase in any one year, on the premises leased to it, and designates the year 1945 as standard. All such contributions made are to be regarded as part of the rent. Conversely, any tax decrease in the same period is to work a corresponding rent reduction.
Also crucial to the controversy is the provision of the agreement that gives to plaintiff a contingent right, as hereinafter shown, to the further extension of its leasehold. Defendant had an extension privilege in its over-lease, and the agreement provides: "In the event Landlord (defendant) extends the term of said over-lease or obtains a new lease of the premises" plaintiff shall have the option of extending the term of its leasehold with defendant for a period not to exceed five years, upon a rental basis of $8,000 per annum, subject, however, to an agreed proportionate increase or decrease, dependent upon any increase or decrease in the annual net rent payable by defendant under such extension of its over-lease or under any new lease obtained by it, above or below an annual net rent of $60,000. Other provisions of the agreement will be noticed as they become relevant to the decision.
The complaint is in five counts. The first count, which demands the return of tax contributions paid, is predicated upon a claim of fraud in the inducement of the amending agreement. The charge is, confining ourselves to essentials, that defendant's agents represented to the agent of plaintiff that defendant intended to exercise its option to extend the over-lease; that upon such exercise it would, at plaintiff's election, extend the latter's leasehold for a maximum period of five years; that plaintiff's rent for such extended period would be reduced by a sum equal to 7.09 per cent of any decrease in defendant's rent under the over-lease below $60,000 per annum for the same period; that said representation *151 were false to the knowledge of defendants and its agents, in that defendant did not intend to extend its said over-lease and in that defendant's said option to extend provided for an annual rental in excess of $60,000; that said representations were fraudulently made to induce plaintiff to enter into the said amending agreement and with intent to deceive and defraud plaintiff thereby; and that plaintiff, believing the representations to be true, and in reliance thereon, was induced to enter into the said agreement.
Briefing of the motion as addressed to the first count is given largely to the question of rescission as a condition precedent to a suit to recover money payments, and of the sufficiency of the allegations of fraud, and as to whether the representations alleged relate not to a present fact but rather to a mere promise of future performance. Anderson v. Modica, 4 N.J. 383 (1950), and compare Roberts v. James, 83 N.J.L. 492 (E. & A. 1912). The points thus made will not be considered in this opinion. The reason is my belief that a final and more definite result lies in the application of the parol evidence rule. Naumberg v. Young, 44 N.J.L. 331, 341 (Sup. Ct. 1882). That rule is matter of substantive law and not of evidence merely. Winoka Village v. Tate, infra. On this aspect of the case supplemental briefs were called for and have been amply furnished.
Plaintiff stands on the principle, enunciated in many cases, that fraud at the option of its victim vitiates a contract, and that where the contract is in writing the parol evidence rule will not exclude the proof. And plaintiff makes the further contention that as between the oral representations in the present instance and the contents of the writing there is no conflict, with the result that no question of altering the writing by parol is involved. More specifically, it is urged that the representations in point simply declared defendant's "then present state of mind," and declared it falsely, thus implementing the fraudulent inducement complained of. The first of these propositions is not absolute. For present purposes it is sufficient to note that its application, *152 in a case like this where the fraud is claimed to have been in the inducement, depends, for one thing, upon whether the subject matter of the inducement is additional to or included in that of the writing.
Numerous are the New Jersey cases on the general question that appear in the briefs. These are not reconcilable throughout. But the inconsistencies that are shown, in what for the convenience of contrast may be called the older cases, appear to be resolved in two recent decisions that are binding upon this court and which I judge to rule the question. Schlossman's, Inc. v. Niewinski, 12 N.J. Super. 500 (App. Div. 1951); Winoka Village v. Tate, 16 N.J. Super. 330 (App. Div. 1951). These decisions illustrate respectively the negative and the positive application of the principle in point. In the Schlossman's case evidence of the inducing fraud was admitted because the court found it to relate to matter additional or extraneous to the writing. In the Winoka case, on the other hand, the evidence of fraud was excluded for the reason that it related to the subject matter of the contract as embraced in the writing.
Moreover, the older cases, in the main if not entirely, are distinguishable from the case now submitted. In Cummings v. Cass, 52 N.J.L. 77 (Sup. Ct. 1889), the court said:
"As an additional warranty, that is an addition to the contract, the present representations were clearly inadmissible. So soon, however, as they displayed such features as went to show that through them the contract had been fraudulently induced, and so was unenforceable for that reason, at the election of the defrauded party, the rule excluding parol testimony to enlarge a written contract became inoperative. * * * when the fraudulent affirmations are once proved to exist, the written contract becomes unimportant. * * * The right to prove fraud, in whatever shape it may exist, to avoid written contracts, has been so uniformly recognized that it can hardly be said to have been the subject of serious judicial discussion * * *."
The full import of what is thus expounded by our former Supreme Court is not shown ever to have had the final sanction *153 of our highest tribunal, and on the face of things it therefore appears to have been clearly overruled by Winoka Village v. Tate, supra.
In citing Mayher v. Brunner, 6 N.J. Misc. R. 1066 (Sup. Ct. 1928), plaintiff is probably mislead by the case's generalized dicta. The actual holding appears to be adverse to its point. There one of the seller's representations was that the stucco material in a building was first-class, and another that the buyer would have no trouble with it. The second of these statements the court held to be merged in the written contract of sale, which contained a guarantee of the stucco for one year. It left only the affirmation of first-class material as a ground of action. Gordon v. Schellhorn, 95 N.J. Eq. 563 (Ch. 1924) is likewise distinguishable. The suit there was for rescission of the sale of embroidery machinery which had been advertised for sale together with a lease of the premises where the machinery was installed. Rescission was ordered on the ground that the contingencies governing the obtaining of the lease were not expressed in the contract but concealed by the seller. In the present case, as will appear, the contingencies are fully and openly expressed. My view of Margolies v. Pinnas, 1 N.J. Misc. R. 117 (Sup. Ct. 1923), affirmed 99 N.J.L. 515 (E. & A. 1924), is that parol in that case was admitted not to contradict but to explain the terms of the contract. It is notable, moreover, that the parol there was a means of revealing the usurious illegality of the consideration. In Easy Term Loan Co. v. Silberman, 100 N.J.L. 67 (Sup. Ct. 1924), the question also had to do with illegality of consideration. Another case plaintiff relies on is Newton v. Middleton, 3 N.J. Misc. R. 157 (Sup. Ct. 1925), but there is nothing to show in the case as reported that the matter of water supply, the subject of the inducement there claimed, was mentioned in either the contract of sale or in the deed.
The other precedents included in plaintiff's citations are for various reasons equally without bearing on the question. One of them is not concerned at all with an issue of fraud *154 in the representations (American Photo-Player Co. v. Harris Amusement Co., 3 N.J. Misc. R. 558 (Sup. Ct. 1925). Others deal not with fraud in the inducement but in the factum or execution of the contract. (Marsella v. Bloch, 101 N.J.L. 115 (E. & A. 1925); Den v. Moore, 5 N.J.L. 470 (Sup. Ct. 1819). Others are cases that do not involve the contradiction of a writing, the representations therein relating to extrinsic matter. (Armstrong v. Hall, 1 N.J.L. 178, (Sup. Ct. 1793); Sheldon Co. v. Harleigh Cemetery Ass'n., 73 N.J.L. 115 (Sup. Ct. 1905); Batura v. McBride, 77 N.J.L. 779 (E. & A. 1909)). And others yield no more than dicta. (Society, etc. v. Haight, 1 N.J. Eq. 393 (Ch. 1831); Chetwood v. Brittan, 2 N.J. Eq. 438 (Ch. 1848); Martin v. Righter, 10 N.J. Eq. 510 (E. & A. 1856).
I have gone carefully into the decisions, realizing that where fraud is alleged the opportunity to prove it is not lightly to be denied. I think it will appear, however, that there are circumstances  and I am convinced this case presents them  in which principles of yet more compelling moment must control, as the present state of our decisional law attests.
For the sake of clarity to the utmost let it here be noted that a certified transcript of depositions taken in the case under Rule 3:26 are before me on this motion (Rule 3:56-3), and that it appears therefrom, without contradiction, by the testimony of the owner and operator of the plaintiff corporation, who is also the person by whom plaintiff dealt throughout these transactions, that the representations in question were not made at any one time but upon a number of occasions within the space of three months prior to the execution of the writing; and that on the date the writing was executed by defendant at its New York office it was thereupon taken by the witness, unexecuted as to plaintiff, to plaintiff's attorney in Jersey City for examination and advice, the instrument being thereupon signed and executed by plaintiff and returned by it to defendant. It is to be observed also that no claim of deception is made in any particular *155 with respect to the meaning and effect of the writing, nor that there has been at any time on plaintiff's part a failure to understand its contents fully and in detail. What then is plaintiff's contention? It argues, as I have indicated, that its case is not within the authorities that interdict proof of oral statements in contravention of a writing, because no such prohibitive conflict is present. It earnestly contends that its grievance is confined to the one thing to which the representations in dispute had reference, and that is defendant's "then present state of mind," and that the position thus taken is in no way affected or embarrassed by anything within the scope of the contract as subsequently written. So complete is the abstraction of the oral statements from everything else that the question comes to mind how plaintiff could hope to prove that the representations of defendant's "then present state of mind" were untrue. Surely it could not be done in a vacuum, but only on the basis of an incongruity between the alleged inducement and that which was induced, namely the writing from which plaintiff seeks to extricate itself by getting its money back. Thus emerges the inevitable conflict. At any rate, I find the proffered distinction between a conflict and no conflict so impalpable that its acceptance would in my judgment dissipate by fictional refinement the very principle of law involved.
After all, our real concern here is with meanings. What do the stated representations mean? And what does the agreement mean? The representations alleged mean that by them defendant was bound and committed, as far as words could make it so, to give plaintiff the opportunity to extend its lease-hold upon the terms indicated, by defendant's exercise of the option to extend its own over-lease. And this commitment was absolute and definite. Had defendant acted in keeping with its attributed word, no suit could have resulted. Indeed, if this certainty be lacking, it follows for that reason alone that the claim is groundless. The written instrument on the other hand is not certain at all; it is neither absolute nor definite in any sense, but a tissue of contingencies. *156 It leaves defendant free to exercise its option or not to exercise it and to do either by dint of no fact or happening external to itself, but entirely as matter of its own arbitrary choosing. In keeping with this divergence, ample provision is made for separate application to the actual event, including the making of certain cash reimbursements to plaintiff should its lease be not extended. Performance and non-performance by defendant are contemplated in the contract with equal emphasis and in the plainest terms. It is to function in its appropriately opposite provisions, "in the event Landlord extends the term of said over-lease or obtains a new lease of the premises demised" and "in the event the Landlord does not extend the terms of said over-lease or obtain a new lease of the premises demised." It would simply not be possible to hold defendant to the oral statements charged, without denying to it the terms of the writing.
But plaintiff's position presents another difficulty. It becomes obvious, I think, that its "then-present-state-of-mind" theory is completely immaterial, to say the least. What possible importance could attach to the particular time as of which defendant's state of mind was ostensibly declared, so long as the removal of artifice or error was effected in time to prevent plaintiff from obligating itself in unintended ways? Surely fraudulent design on defendant's part is not to be presumed, and somewhere between the last of the oral declarations and plaintiff's execution of the document it became incumbent upon it to resolve the situation by ascertaining whether it was to rely on the one or the other. Essential justice is involved here, for in the absence of an opportunity to a promisor in such a case to reduce matters to a certainty, deception might easily be exerted in the opposite direction by permitting the promisor to have no impression but the false one that its dealings are unquestioned, the silence of the promisee meanwhile covering the secrecy of a grievance conserved and calculated. Another test is this: assuming plaintiff was deceived, intentionally or not, by the oral statements alleged, later oral statements of like import with the writing *157 must have undeceived it. How then can the same undeceiving effect be denied the writing?
If plaintiff's view is correct it is not apparent how it can be possible by candid fullness in a written contract to correct misunderstandings in the preliminaries, leaving aside the familiar principle of merger; nor how we are to avoid serious impairment of the indispensable doctrine that written instruments are presumed to express the understanding and intent of those who sign them.
A word is in order regarding that part of the representations alleged which has to do with a prospective decrease in the rent, and to which, in my reasoning of the problem, I have not specifically referred. I judge that to be of a piece with the rest of it. The dominant feature is the extension of plaintiff's lease, the rental terms being dependent thereon. And to both of these things the same logic in the situation applies. The balanced contingencies of the written agreement which govern equally rental increase and decrease have the same force as the other contingent provisions relative to the extension. And the same principles are evoked.
As to the first count, defendant's motion is granted for the reasons set forth, but with this limitation. It appears that an issue is raised under the first count respecting the amount of payments by plaintiff and of reimbursements by defendant according to the contract terms. That issue is reserved. It is not intended that the granting of the motion should foreclose any right to sue for a contract breach.
As to the remaining counts defendant's motion is likewise granted, for the reasons I shall state. The second and fifth counts are based on want and inadequacy of consideration. I think the counts deficient in law. The terms of the agreement satisfy the necessities for consideration. True, everything is contingent, but that gives no substance to plaintiff's claim. 1 Williston on Contracts, p. 346, states:
"A conditional promise is sufficient consideration. The performance of such a promise does not necessarily involve either detriment or benefit, since the condition upon which any action of the promisor *158 is to take place may not happen. But the possibility that the condition may happen involves a chance of detriment which is sufficient to make the promise valid consideration. Even though the condition in a promise relates to an unknown fact which is already determined so that if the parties knew the truth it would be apparent that the promisor really bound himself for nothing, the consideration is sufficient."
The third count is for recovery of payments made on account of increased taxes within the purview of the contract. The gist of the claim is that these payments were made without the prescribed notice of the increase. The contract provides that plaintiff's obligation in this respect "shall become effective ten days after the landlord (defendant) has notified the tenant" of the increase. Plaintiff does not deny that there was such increase nor that it was "finally fixed and determined." Complaint is based solely on the failure of defendant to give the notice. Since plaintiff made the payment without requiring the notice, I regard it as having been waived.
The fourth count alleges that the amending agreement is "vague, indefinite and uncertain in law." As matter of law and fact, I find this count to be without substance.
The counterclaim is not substantiated in fact, nor do I find as matter of law that defendant is entitled to summary judgment thereon. That motion, therefore, is denied.